# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

In re: LANEKA MARIE STUBBS,

    *Debtor.*

___

SHELDON STEIN, Trustee,

    *Plaintiff-Appellant,*

    *v.*

LANEKA MARIE STUBBS,

    *Defendant-Appellee.*

Nos. 16-8025/8027

Appeal from the United States Bankrupcty Court
for the Northern District of Ohio at Cleveland.
No. 14-17806; Adv. No. 15-01190—Jessica E. Price Smith, Judge.

Decided and Filed: March 9, 2017

Before: HUMPHREY, OPPERMAN, and PRESTON, Bankruptcy Appellate Panel Judges.

___

**COUNSEL**

**ON BRIEF:** Sheldon Stein, S. STEIN COMPANY LLC, Cleveland, Ohio, for Appellant.

___

**OPINION**

___

    GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge. These related appeals concern a Chapter 7 trustee's efforts to obtain income tax returns from a debtor and the remedies which the trustee pursued upon the debtor's failure to turn over the tax returns. The trustee appeals orders denying the trustee's default judgment motion in an adversary proceeding seeking to revoke the debtor's discharge for failure to turn over the tax returns; dismissing the adversary

proceeding and vacating an order which required the debtor to appear for a Bankruptcy Rule 2004 examination. Because the trustee's actions were proper, we vacate the bankruptcy court's orders and remand for proceedings consistent with this opinion.

## STATEMENT OF ISSUES

The appellant, the Chapter 7 trustee, Sheldon Stein (the "Trustee"), raises the following issues:

1. Did the lower court err in *sua sponte* vacating, seven months after the fact, its order under Bankruptcy Rule 2004(a) requiring the debtor to appear for examination and to bring financial records to the exam?
2. Did the lower court err in applying a wrong legal standard in *sua sponte* overruling the Trustee's motion for default judgment in the following adversary proceeding not defended by the debtor?
3. Did the lower court err in *sua sponte* dismissing the adversary case filed by the Trustee against the debtor and not defend [sic] by the debtor?
4. Do the *sua sponte* orders entered in the Chapter 7 case and the following adversary proceedings violate public policy?

Appellant Br. at 2, BAP Case 16-8025 ECF No. 7.

## JURISDICTION

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have these appeals heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted). An order denying default judgment and dismissing an adversary proceeding is a final order. *Columbiana Cty. School Employees Credit Union, Inc. v.*

*Cook* (*In re Cook*), 342 B.R. 384, 2006 WL 908600 (B.A.P. 6th Cir. Apr. 3, 2016) (table decision) (citing *Davis v. Courington* (*In re Davis*), 177 B.R. 907, 910 (B.AP. 9th Cir. 1995)).[1]

## STANDARD OF REVIEW

A bankruptcy court's decision to deny a motion for default judgment is reviewed for an abuse of discretion. *Cook*, 2006 WL 908600, at *1. Decisions concerning a 2004 examination are also reviewed for an abuse of discretion. *Buckner v. Oklahoma Tax Comm'n* (*In re Buckner*), 271 B.R. 213, 2001 WL 992063, at *1 (B.A.P. 10th Cir. Aug. 30, 2001) (table decision). "An abuse of discretion is defined as a definite and firm conviction that the [court below] committed a clear error in judgment." *Mayor and City Council of Baltimore, Md. v. W. Va.* (*In re Eagle Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) (internal quotation marks and citation omitted, alteration in original). An error of law is necessarily an abuse of discretion. An order to dismiss a complaint is reviewed de novo. *See Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015) (dismissal of a complaint for failure to state a claim requires de novo review). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations and quotation marks omitted).

## FACTS

On December 16, 2014 the debtor, Laneka Marie Stubbs ("Stubbs"), acting pro se, filed a petition for relief under Chapter 7 of the Bankruptcy Code. The meeting of creditors was scheduled for January 20, 2015. The Trustee was concerned about a potential tax refund being an estate asset. Since Stubbs had not filed her 2014 tax returns (which were not due until April 2015), the Trustee completed the meeting of creditors in February 2015, and instructed Stubbs to send him a copy of her 2014 tax returns when filed and to not spend any refund she received. Stubbs received her discharge on April 29, 2015.

---

[1] Although, standing alone, the order vacating the 2004 examination may not be final, any interlocutory orders became final by the dismissal of the litigation by the bankruptcy court. *Compare In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 346 (B.A.P. 6th Cir. 2015) (discovery order deemed final because underlying litigation completed), *with In re Gray*, 447 B.R. 524, 532 (E.D. Mich. 2011) (order granting a 2004 examination is not final).

When the Trustee did not receive the tax returns nor hear from Stubbs by September 2015, he moved to conduct a Rule 2004 examination of Stubbs. *See* Fed. R. Bankr. P. 2004. An order was entered granting the motion on September 24, 2015 and scheduling the examination for October 20, 2015 at 1:30 a.m. That order was amended by an order entered on October 21, 2015 to correct the date and time and to schedule the examination at Suite 500, 50 Public Square, Cleveland, Ohio on November 4, 2015 at 10:30 a.m.[2] Stubbs was required to bring a copy of her 2014 state and federal tax returns to the examination. Stubbs did not appear.

Later that same day, November 4, 2015, the Trustee filed an adversary proceeding to revoke Stubbs' discharge pursuant to § 727(d)(2) and (3). The Trustee alleged that "[Stubbs] disobeyed an Order of the Court in that she did not appear for examination at the time and send the tax returns to the Plaintiff . . . ," also noting that Stubbs neither requested the examination and document production be postponed nor rescheduled. Compl. at 2, Adv. No. 15-01190 ECF No. 1.

Despite proper service of the complaint and summons, Stubbs failed to file a Rule 12 response and the Trustee moved the clerk of court for an entry of default pursuant to Federal Rule of Civil Procedure 55(a), incorporated by Federal Rule of Bankruptcy Procedure 7055. The Trustee limited his request for default to the § 727(d)(3) basis for revocation of the discharge, failing to obey a lawful court order. The Clerk entered the default which the Trustee followed with a motion for default judgment.

The court scheduled the motion for default judgment for a hearing on February 23, 2016. Stubbs did not attend the hearing, but the court engaged the Trustee in a colloquy. First, the court wanted to know "why was the 341 concluded before the tax return was given?" Tr. of Hr'g Feb. 23, 2016 at 2, Adv. No. 15-01190 ECF No. 23. The Trustee responded that:

> I adjourned it two or three times because the tax return technically was not due until April 15. The Debtor was instructed – because she didn't produce those tax returns, she was instructed to prepare them. So I gave her sufficient time to comply with that request, so that she didn't feel that she was unduly pressured.

---

[2] The amended order stated in the caption that it was to correct the date and time and it is evident the time of the original order was incorrect. However, nothing in the record suggests any confusion was caused by these changes.

> But I did give her one, two, three – four opportunities, including the two adjournments, the 2004(a) and the filing of the Complaint here to just call me up and say, here's the tax return.

*Id.* Later, the court asked: "[d]o you know what happens in a Chapter 13 case if a debtor doesn't provide a tax return?" *Id.* at 3. The Trustee responded that the case gets dismissed. The court then stated:

> Is there a distinguishable reason why in a Chapter 13 case that case should be dismissed, the debtor have the opportunity to do this again and have a discharge if they comply later, than in a Chapter 7 the debtor not have the case dismissed and then have an opportunity later to comply? Because I'm trying to figure out what the difference is other than the fact that the debtors in the Chapter 7 don't have the funds to do this.

*Id.* The Trustee responded as follows:

> In this particular case, the Bankruptcy Code obligated her to give me in advance of the 341 the last filed tax return.**³** She filed this case in December. She did comply with that Code section. And, however, I requested the new tax return because the case was filed in December. And about 95 percent of the non-exempt money would have been property of the estate. If she hadn't given me the last filed tax return, I would have asked for dismissal. But she complied with that. She just wouldn't do her – her next tax return.

*Id.* at 3–4 (footnote added).

At the conclusion of the hearing, the court offered the Trustee the opportunity to move to vacate the discharge and dismiss the case, to which the Trustee responded:

> Your Honor, how can I tell if there is – and make an assessment of the Debtor's conduct if she doesn't cooperate? And allowing her to dismiss potentially allows her to keep assets which belong to creditors. What I am really asking is, the Debtor should at least cooperate and follow the same rules. All I'm asking for was cooperation and I expected Your Honor maybe to . . . put on an order to show cause and have her come in and tell us why she didn't do that.

*Id.* at 6. The court made the following rulings at the hearing:

---

**³***See* 11 U.S.C. § 521(e)(2)(A) (requiring an individual Chapter 7 or 13 debtor to provide to the trustee, "not later than 7 days before the date first set for the first meeting of creditors", the federal tax return (or a transcript of such return) for the most recent tax year that ended prior to the petition date. In this case, the required return was for 2013. As 2014 ended during the pendency of the case, Stubbs was also required, upon request of the Trustee, to provide her 2014 federal tax return "at the same time filed with the taxing authority." 11 U.S.C. § 521(f)(1).

1) that it was not appropriate to revoke Stubbs' discharge and, therefore, that the Trustee's motion for default judgment would be denied and the adversary proceeding dismissed; and
2) that it would grant the Trustee time to file a "show cause."

*Id.* at 6–7. The court then continued the hearing until June 7, 2016 and deferred entering orders on its rulings.

On April 8, 2016, the Trustee filed a supplemental memorandum in support of default judgment.

On May 13, 2016, the bankruptcy court entered a sua sponte order requesting that Stubbs show cause why she should not be found in contempt for failing to appear at the Rule 2004 examination in contravention of the court's order, to which the Trustee responded on May 18. The Trustee argued that the revocation of discharge adversary proceeding was the appropriate remedy and "the current civil contempt proceedings, started *sua sponte* by the Court after discharge, harm the bankruptcy estate." Trustee's Mem. at 3, Case No. 14-17806 ECF No. 44. The Trustee noted the various options available to the court based upon a finding of civil contempt, such as daily fines, imprisonment, attorney fees or damages, but candidly stated that "[t]he Trustee does not believe the Court will impose these drastic sanctions, and, indeed, the Trustee is not asking the Court to do so." *Id.* at 4. The Trustee further stated that "dismissal after discharge [was] a nullity" and "[t]he debtor will not comply with future court orders or cooperate with the Trustee <u>except</u> under the threat of revocation of the discharge under § 727." *Id.* at 4–5 (emphasis in original). Stubbs did not file anything in response to the show cause order.

On June 7, the court held the combined hearing on the continued motion for default judgment and the court's show cause order. Again, Stubbs failed to appear. The hearing was very short. The entire transcript reads:

> Court: All right. This is a Motion for Default Judgment and then the Order to Appear and Show Cause. Mr. Stein, I'm entering an order on the Order to Appear and Show Cause that will find that the request as filed for the 2004 examination came out of what appears to be the Trustee's decision to conclude the 341 exam as opposed to extending it; that by concluding it, the process for entering a discharge was triggered. And so there was an opportunity for this case to have

> been dismissed for failure to prosecute as opposed to have been entered in a discharge and now the revocation of discharge granted.
>
> I am also going to be entering an order that will revoke the authority of the Clerk's office to enter 2004 exams. So those will now all be required to be set for hearing.
>
> And I am vacating the order with respect to the 2004 examination, which will then not create cause for the default judgment.
>
> So with respect to the Order to Show Cause, I find that the Debtor is not in contempt. The previous 2004 exam ordered is revoked and the Motion for Default Judgment is denied. And there's a written order that you'll be welcome to read.
>
> [The Trustee]: I'm not questioning but I'm merely saying that I didn't hear everything that you said.
>
> Court: That's fine. I've written an order. It will be submitted. You can take a look at it.
>
> [The Trustee]: Thank you.

Tr. of Hr'g June 7, 2016, Adv. No. 15-01190 ECF No. 24.

On June 9, 2016, the court entered an order that 1) sua sponte vacated the order scheduling the Rule 2004 examination; 2) denied the Trustee's default motion and 3) sua sponte dismissed the adversary proceeding.[4] The order criticizes the Trustee for his approach to this case:

> When the Debtor initially failed to file her tax returns, the Trustee failed to seek dismissal of the case, failed to seek a delay in the entry of the Debtor's discharge, and failed to seek to hold the Debtor in contempt for her failure to cooperate with the Trustee as required by 11 U.S.C. § 521. Any of these actions would have prevented the Debtor from receiving her discharge. Instead, the Trustee concluded the § 341 meeting, did not inform the Court of the Debtor's failure to cooperate, and cleared the path for the discharge entry.

Order at 3, Case No. 15-01190 ECF No. 15. The court made clear its preference to have the case dismissed and mentioned this is a regular result in Chapter 13 cases. *Id.* In addition, the court found that the Trustee did not meet his burden for default pursuant to § 727(a)(6) and needed to establish that Stubbs refused to comply with a court order through a showing of civil contempt.

---

[4] The same order was filed in the estate case and the adversary proceeding. For simplicity, the citation is only to the adversary proceeding docket.

The Trustee timely appealed the orders entered in the estate case and adversary proceeding.

## DISCUSSION

The bankruptcy court's rulings are based largely on the court's conclusion that the Trustee used an improper approach to dealing with a debtor who has failed to provide a copy of tax returns. The court's stated preference for this situation was that the trustee continue the creditors' meeting and keep the creditors' meeting open until any outstanding tax return is provided. If the return was not provided, the trustee could pursue an adversary proceeding objecting to the debtor's discharge or, alternatively, seek dismissal of the Chapter 7 case for failure to produce the tax returns, as is done in Chapter 13 cases.[5]

Left to stand, the bankruptcy court's rationale behind its orders may allow Chapter 7 debtors that fail to deliver to the trustee an estate asset to keep their discharge and perhaps suggests that such debtors cannot be compelled to participate in discovery as to their § 521 obligations.[6] Alternatively, it requires Chapter 7 trustees to extend the date to object to discharge until an asset such as a future tax refund is turned over, despite § 727(d)(3)'s design to avoid this type of situation, or it may suggest that dismissal prior to discharge is an acceptable remedy in an asset Chapter 7 case.

Unlike Chapter 13, a Chapter 7 debtor does not have an absolute right to dismissal and a bankruptcy court typically does not dismiss a case with an asset of consequential value that can be liquidated for the benefit of unsecured creditors. Indeed, estate assets usually are administered regardless of whether a debtor receives a discharge. By contrast, a debtor's participation in Chapter 13 is entirely voluntary and generally a Chapter 13 case (unless previously converted) may be dismissed by a debtor at any time. 11 U.S.C. § 1307(b).

---

[5] See 11 U.S.C. §§ 1308(a) (requiring the filing of pre-petition tax returns "for all taxable periods ending during the 4-year period ending on the date of filing the petition.") and 1325(a)(9) (requiring the debtor to file all "Federal, State and local tax returns as required by section 1308.").

[6] Section 521 imposes a number of obligations on a debtor, including, as is relevant to this case, cooperating with the trustee as is necessary for the trustee to carry out the trustee's obligations under the Bankruptcy Code (§ 521(a)(3)); surrendering property of the estate to the trustee (§ 521(a)(4)); and providing copies of certain tax returns to the court or trustee (§ 521(e) and (f)).

Therefore, the court's apparent conclusion that there is not a "policy or bankruptcy code justification for treating Chapter 7 and Chapter 13 debtors differently where both fail to provide documents required by their respective trustees" overlooks these distinctions. Order at 3.[7]

## I. Entry of the Order Denying Default Judgment Constituted an Abuse of Discretion

While "[r]evocation of a debtor's discharge is an extraordinary remedy" (*Smith v. Jordan* (*In re Jordan*), 521 F.3d 430, 433 (4th Cir. 2008)), the bankruptcy court's entry of the order denying default judgment was an abuse of discretion.[8] The court stated in its order that Stubbs' conduct did not rise to the necessary level to revoke her discharge. However, the facts show that Stubbs was served the 2004 examination order and did not appear or respond in any way. The amended order was clear and definite. It required the production of the 2014 tax returns and

---

[7] Section 521 generally supports dismissal of Chapter 7 cases for failure to provide to the trustee a copy of the Federal income tax return for the tax year preceding the filing of the bankruptcy petition (*see* § 521(e)(2)(B)); however, Congress did not provide for dismissal of Chapter 7 cases for failure to provide copies of other tax returns (*compare* § 521(f) with § 521(e)(2)(B)). In this case Stubbs provided the Trustee with the Federal income tax return for the year preceding the filing of her petition, but not for 2014, the tax year during which she filed her petition. Moreover, even under § 521(e)(2)(B), a debtor may not be able to seek dismissal when the estate has assets available for creditors. *Compare In re On*, 2010 WL 5394804 (Bankr. N.D. Cal. Dec. 28, 2010) (dismissal not mandatory upon a motion of the debtors to dismiss for their own failure to comply with § 521(e)(2)(B)), *with In re Casey*, 274 F. App'x. 205 (3d Cir. Apr. 18, 2008) (trustee's motion to dismiss required to be granted when the debtor failed to comply with § 521(e)(2)(B) and did not show that failure was beyond the debtor's control). *See also In re Grasso*, 341 B.R. 821, 825 (D.N.H. 2006) (trustee had discretion on whether to seek dismissal for the debtor's failure to comply with § 521(e)).

[8] Federal Rule of Civil Procedure 55 (applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7055) states in applicable part:

(b) Entering a Default Judgment.

  (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

  (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

    (A) conduct an accounting;
    (B) determine the amount of damages;
    (C) establish the truth of any allegation by evidence; or
    (D) investigate any other matter.

Stubbs' appearance for examination at a specific place and time.  The court's decision that this does not rise to the level to revoke Stubbs' discharge pursuant to § 727(d)(3) is unsupported by the case law and the facts.

Revocation under § 727(d)(3) incorporates the basis for denying a discharge under § 727(a)(6).  Therefore, § 727(a)(6)(A), read together with § 727(d)(3), provides for the revocation of a discharge if "the debtor has refused, in the case . . . to obey a lawful order of the court . . . ." 11 U.S.C. § 727(a)(6)(A).  Case law is divided as to whether "refused" as used in § 727(a)(6) requires willfulness or intent to not comply with a court order.  The Fourth Circuit requires a finding of willfulness or intent, which may be established with evidence "that the debtor received the order in question and failed to comply with its terms." *Jordan*, 521 F. 3d at 433 (citation omitted).  Upon such showing, the burden shifts to the debtor to explain his lack of compliance.  *Id.* (citations omitted).  The Eleventh Circuit also appears to follow this standard. *The Cadle Co. v. Parks-Matos* (*In re Matos*), 267 F. App'x. 884, 886 (11th Cir. 2008).  Mistake or inadvertence could negate a finding of intent or willfulness.  *See Davis v. Osborne* (*In re Osborne*), 476 B.R. 284, 296–97 (Bankr. D. Kan. 2012) (citation omitted) (contrasting the willful standard with the civil contempt standard).[9]

Other courts, including many bankruptcy court decisions within the Sixth Circuit, follow the civil contempt standard.  *See, e.g. Hunter v. Magack* (*In re Magack*), 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999).  In the Sixth Circuit, civil contempt is established by showing that "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) did in fact violate the order; and (3) the order violated must have been specific and definite." *Id.* (citing *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)).  If these elements have been shown, the debtor can provide evidence of impossibility or inability to comply.  *Hazlett v. Gorshe* (*In re Gorshe*), 269 B.R. 744, 746 (Bankr. S.D. Ohio 2001).

---

[9] Although the defense of inability to comply was characterized in *Osborne* as unique to the willful standard, inability is also a defense to civil contempt.  *See U.S. v. Rylander*, 460 U.S. 752, 757, 103 S. Ct. 1546, 1552 (1983) (present inability to pay is a defense to civil contempt). *See also Elec. Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (applying the *Rylander* standard).

Under either standard, the court's decision to deny default judgment is reversible error. The bankruptcy court's decision, in applying the civil contempt standard, found that "the Trustee has failed to prove that [Stubbs'] behavior rises to this level . . . ." Order at 4. But the court never suggested Stubbs lacked knowledge of the 2004 examination order, or that she did not violate it, or that the order was anything but clear and specific. None of those issues were addressed at the default hearing. Nor, of course, did Stubbs present any evidence under the civil contempt standard or the willfulness standard when, under both standards, the burden shifted to Stubbs.

In denying the Trustee's motion for default judgment, the court found that by failing to act more timely on Stubbs' failure to provide her tax returns, the Trustee prejudiced Stubbs. This reasoning may be construed as an application of the doctrine of laches, even though the court's order does not use the term, and the debtor never presented it as an affirmative defense. "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S. Ct. 534, 543 (1961).

Some courts have found that belated attempts to revoke a discharge under § 727(d) may be barred by the doctrine of laches. *See Schilling v. Reid*, 372 B.R. 1, 3 (W.D. Ky. 2007). However, in *DuBois v. Faber* (*In re Faber*), the court considered the use of laches as an affirmative defense to a complaint to revoke a discharge under § 727(d)(3) and aptly explained why such a defense is not available under these circumstances. 330 B.R. 235 (Bankr. N.D. Ind. 2005). In that case, the Trustee waited two and a half years to bring the action to revoke the discharge for failure to comply with an order compelling turnover of federal and state tax returns. In approving the motion for default judgment, the court considered the laches defense:

> The Court is committed to the concept that the violation of a "lawful order of the Court" *ipso facto* establishes grounds for revocation of a debtor's discharge [*See*, 11 U.S.C. § 727(d)(3)], or within the context of 11 U.S.C. § 727(a)(6)(A) constitutes grounds for denial of a debtor's discharge. Effective administration of bankruptcy cases requires debtors to comply completely with lawful orders of the Court entered in their cases. "Laches" is a potential equitable defense: however, its assertion as a defense depends upon an active participant in the adversary proceeding in which revocation of discharge is sought; *See, Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004). In this case, the

> debtor/defendant has failed to contest the complaint, and this immutably leads to revocation of his discharge.
>
> The Court finds—in its view constrained by the law with respect to an opponent's failure to appear and assert a potentially valid basis for denying the plaintiff's requested relief—that the Trustee/plaintiff has established a *prima facie* basis in this adversary proceeding for the revocation of the debtor's/defendant's discharge, and that revocation of the debtor's/defendant's discharge should be granted pursuant to 11 U.S.C. § 727(d)(3)/11 U.S.C. § 727(a)(6)(A).
>
> It is with some reluctance that the Court grants the plaintiff's motion for default judgment.

*Id.* at 240. Like the debtor in *Faber*, Stubbs has failed to appear and thus cannot be afforded the protections of an affirmative defense; however, unlike *Faber*, the underlying facts do not favor the application of the doctrine of laches.

First, "[w]here Congress has provided a specific and relatively short statute of limitations, it can be inferred that the federally created limitation is not to be cut short . . . ." *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 214 (9th Cir. 1962). Section 727(e)(2) provides a time limitation of "the later of . . . (A) one year after the granting of such discharge; and (B) the date the case is closed." 11 U.S.C. § 727(e)(2). "Since Congress has provided that a request for revocation of a discharge must be made within one year after the discharge, 11 U.S.C. § 727(e), laches cannot be applied to shorten that period." *W. Suburban Bank of Darien v. Arianoutsos (In re Arianoutsos)*, 116 B.R. 116, 119 (Bankr. N.D. Ill. 1990). However, other courts have applied the doctrine of laches when more than a year passed since the discharge was ordered, but the case has remained open. *See Reid*, 372 B.R. at 3. In this case, only six months passed from the April 29, 2015 discharge to the November 4, 2015 complaint for revocation of discharge and thus the Trustee brought his complaint well within the one-year time limit set by § 727(e)(2)(A).

Moreover, to support the application of the doctrine of laches, the court would have to make findings that the Trustee acted with a "lack of diligence" by not seeking a delay or denial of discharge. *Costello*, 365 U.S. at 282. A lack of diligence means something more than a party not taking a particular action against a party. *See United States v. Weintraub,* 613 F.2d 612, 619 (6th Cir. 1979) (The doctrine of laches did not bar the IRS from collecting from a third party after a delay of 13 years as the service sought to collect from the taxpayer upon whom the third-

party's liability was predicated.), *cert. denied*, 447 U.S. 905, 100 S. Ct. 2987 (1980). The bankruptcy court's findings do not support the conclusion that the Trustee was not diligent. Far from a lack of diligence, it appears that the Trustee went to great lengths to secure the tax returns in a timely fashion, with graduated steps intended to achieve the desired result – turnover of the tax returns.

In addition, there was no evidence that Stubbs was prejudiced by the Trustee's decision to seek revocation of her discharge rather than a dismissal or a delay of the discharge. It was Stubbs' failure to turn over the tax returns that led to an action for revocation of the discharge, not the Trustee's decision to delay legal action. Indeed, had Stubbs provided her tax returns after the April filing deadline, she would have benefited from the Trustee's decision to not move for dismissal or delay of the discharge. The very purpose of revocations under § 727(d) is to allow debtors to receive their discharge early in the case, "while protecting the estate and creditors if one of the enumerated grounds for revocation arises." 476 B.R. at 292 (citing 6 *Collier on Bankruptcy*, ¶ 727.17[6] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. rev. 2016) (additional internal citation omitted)). *See* S. Rep. No. 1173, 91st Cong., 2d Sess. 12 (1970) ("This change would render it unnecessary for the bankruptcy court to delay determining whether the bankrupt is entitled to a discharge in order to make sure that the bankrupt complies with orders and responds to questions after granting of the discharge. Revocation of discharge rather than delay in granting would be a preferable procedure and is of sufficient strength to prevent abusive tactics by a bankrupt.").[10]

As a final point, within the strictures and limitations of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and other authority, the administration of the bankruptcy system generally falls to the United States Trustee Program (the "UST"). *See generally* 28 U.S.C. § 586. *See also In re DeShetler*, 453 B.R. 295, 302–03 (Bankr. S.D. Ohio 2011) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 100, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6061 ("The [United States Trustee's Program] was created . . . as a pilot effort in select federal judicial districts to remedy the perceived institutional bias arising out of bankruptcy judges' handling of

---

[10] Section 727(d) is based on Section 15 of the former Bankruptcy Act. 6 *Collier on Bankruptcy*, ¶ 727.LH[5] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. rev. 2016).

both the judicial and administrative aspects of the bankruptcy system."). As part of these duties, the UST is responsible for the administration of trustees, as appropriate. 28 U.S.C. § 586(a)(3). Bankruptcy courts must, of course, adjudicate all necessary legal determinations within their jurisdiction, but defer to the legally valid, discretionary administrative decisions of Chapter 7 trustees as authorized under 11 U.S.C. § 704. Having found the approach of the Trustee in this case to be within the bounds of the Code, deference to the Trustee's determinations as to how to proceed in this matter is warranted.

For all these reasons, the order denying the Trustee default judgment is vacated.

### II.　Sua Sponte Dismissal of the Adversary Proceeding Constituted an Abuse of Discretion

Since the sua sponte order dismissing the adversary proceeding was based upon the decision to deny default judgment, the entry of that order is reversible error as well.

### III.　Entry of the Order Vacating the 2004 Examination Order Constituted an Abuse of Discretion

The entering of the order vacating the 2004 examination order was an abuse of discretion, regardless of whether Stubbs' discharge was revoked. The court appeared to premise this order on the Trustee's decision to conclude the § 341 meeting without having received the 2014 tax returns. But the Trustee did receive the 2013 tax return and the court's approach would have required the delay of Stubbs' discharge for additional months until the 2014 tax returns were due. At the time the creditors' meeting was concluded in February 2015, Stubbs gave no indication that she would not cooperate in providing her 2014 tax returns. As previously noted in the laches argument, § 727(d)(3) alleviates this dilemma by expressly incorporating § 727(a)(6). The Trustee need not delay the discharge, but is permitted instead to file an adversary proceeding to revoke the discharge for the refusal to comply with a court order. Moreover, even if the discharge order had been vacated, the Trustee still had no obligation to seek dismissal of the case and indeed had a fiduciary obligation to determine if the income tax refund represented an asset which should have been liquidated for the benefit of unsecured creditors.

A 2004 examination is a reasonable and usual method to compel a Chapter 7 debtor to provide information that a Chapter 7 trustee or creditor cannot obtain voluntarily. *See In re Fearn*, 96 B.R. 135, 137–38 (Bankr. S.D. Ohio 1989) (denying a motion to quash a 2004 examination and noting that "the primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets . . . ") and *Bank One, Columbus v. Hammond (In re Hammond)*, 140 B.R. 197, 201–02 (S.D. Ohio 1992) (reversing for abuse of discretion the bankruptcy court's quashing of the creditor's 2004 examination). If the debtor objects to the taking of the Rule 2004 examination, then the party seeking to conduct the examination has the burden of establishing "good cause." *Id.* at 201 (*citing Freeman v. Seligson*, 405 F.2d 1326, 1336 (D.C. Cir. 1968)). Stubbs did not object to the Trustee's Rule 2004 examination. Further, even if she did, the Trustee had good cause for conducting the examination, namely to discover the information relating to the 2014 tax returns. For these reasons, the entering of the order vacating of the 2004 examination was an abuse of discretion and the order is vacated.

## CONCLUSION

For the reasons discussed, the bankruptcy court's orders denying the Trustee's motion for default judgment, dismissing the adversary proceeding, and vacating the Rule 2004 examination order are **VACATED** and the case and adversary proceeding are **REMANDED** for proceedings consistent with this decision.